**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------x
**UNITED STATES OF AMERICA,**

     **- against -**                                **17-CR-612 (PKC)**

**PAUL SEMPLICE,**

                   **Defendant.**
-------------------------------------------------------x


### SENTENCING MEMORANDUM ON BEHALF OF PAUL SEMPLICE


**ALLEN C. FRANKEL**
**Attorney at Law**
**299 Broadway, Suite 1405**
**New York, New York 10007**
**212-227-6655**
**allencfrankel@mac.com**

*Attorney for Paul Semplice*

## **Table of Contents**

Introduction ................................................................................................................ 1

Discussion ................................................................................................................... 1

A.    The Nature and Circumstances of the Offense .................................................. 2

B.    The Sentencing Guidelines ............................................................................... 3

C.    Overview of Relevant Legal Principles ............................................................ 4

D.    The Factors Under 18 U.S.C. § 3553(a) Warrant a Non-Guidelines Sentence. ........... 6

E.    Additional Considerations ............................................................................... 12

Conclusion ............................................................................................................... 13

**Introduction**

Paul Semplice is a 55-year old man with no prior criminal record, who will appear before your Honor on March 22, 2019 for sentencing.  On October 3, 2018, Mr. Semplice pleaded guilty to one count of conspiracy to make extortionate extension of credit over a six-month period, a violation of 18 U.S.C. §892(a).  The parties and Probation Department estimate that Mr. Semplice's total offense level is 19, that his criminal history category is I because he has no criminal record, and that his corresponding advisory range under the United States Sentencing Guidelines (the "guidelines") is 30-37 months.

 For the reasons that follow, including Mr. Semplice's background, history and character, the nature of the conduct, and the Court's interest in imposing a sentence sufficient but not greater than necessary to satisfy the aims of sentencing, we respectfully submit that a sentence below the applicable advisory range is warranted.

**Discussion**

Paul Semplice is an excellent example of why the complicated matter of sentencing must be approached seriously, on a case-by-case basis.  Among other things, his sentence must reflect the seriousness of the offense and provide just punishment in an appropriate manner, taking into consideration his past and current life.

In the sections below, we discuss: (a) the nature and circumstances of the offense; (b) the sentencing guidelines as set out by the terms of the plea agreement entered between the parties on October 3, 2018 (the "Plea Agreement" and the Presentence Investigation Report, dated February 15, 2019, ("PSR"); (c) a review the relevant legal authority; (d) application of the factors set forth in 18 U.S.C. § 3553(a) to Mr. Semplice's case; and (e) additional considerations for the Court to consider.

A.       **The Nature and Circumstances of the Offense.**

The charges in the Indictment consist of one count of (i) conspiracy to make extortionate extension of credit, (ii) extortionate extension of credit of John Doe #1, and (iii) extortionate extension of credit of John Doe #1, in violation of 18 U.S.C. § 892(a).  All of the charges relate to the limited period of October 2016 through March 2017.   Semplice is remorseful for his conduct and fully demonstrated his acceptance of responsibility by admitting and pleading guilty to conspiracy to make extortionate extensions of credit, and allocuted with respect to John Doe #1, and, additionally, Mr. Semplice spoke in connection with John Doe #2, an uncharged act.

As concerns the offense conduct with respect to John Doe #1, a contractor, Semplice was involved in extending a short-term loan to the contractor, a company that does regular business with the company for which Semplice worked.  Based on the excellent relationship between the parties, the contractor asked for the short-term loan to continue operations when it otherwise could not meet its own payroll obligations.  The loan enabled the contractor to pay its employees' weekly payroll while it had excessive outstanding receivables that it was trying to collect from clients.  There was no physical harm or actual threat of harm in connection with the loan.  Because the contractor made payments to Semplice in an amount that represented a usurious amount of interest, Semplice agreed to pay forfeiture in installments as part of his guilty plea.

With respect to John Doe #2, Semplice extended a small loan to an acquaintance, who unfortunately had gambling debts having nothing to do with Semplice, that prevented him from paying back the loan to Semplice; John Doe #2 repeatedly made promises to pay back the loan but he never paid the loan back, even though Semplice forgave any interest and asked John Doe #2 to pay only the principal.  After being lied to repeatedly about repayment, Semplice's frustration once got the better of him, and he smacked the individual by "mooshing" his face.  It

is undisputed that this unfortunate and regretted incident did not cause any physical harm to the

individual.  Unfortunately, Mr. Semplice's acquaintance passed away some time thereafter,

and—even though John Doe #2's subsequent demise was in no way related, as the government

stated during bail argument—the PSR is objectionable in its mischaracterization of these events.

**B.      The Sentencing Guidelines**

As discussed above, and set forth in the Plea Agreement, Mr. Semplice pleaded guilty to

count one of the Indictment, conspiracy to make an extortionate extension of credit in violation

of 18 U.S.C. §892(a).  Plea Agreement at 1.  Additionally, Mr. Semplice admitted to the two

above-described acts that comprise the conduct. Plea Agreement at 2.

The parties calculated the applicable offense level under the United States Sentencing

Guidelines as 19, which, for Semplice, who is in Criminal History Category ("CHC") I, carries a

corresponding advisory range of imprisonment of 30-37 months.  Plea Agreement at 4.

The parties calculated the Guidelines offense level as follows:

| | |
|---|---|
| Base Offense Level (§ 2E2.1(a)) John Doe 1: | 20 |
| Base Offense Level (§ 2E2.1(a)) John Doe 2: | 20 |
| Multiple Count Analysis (§ 3D1.2) | |
| Highest Adjusted Level: | 20 |
| Two Units Added Levels (§ 3D1.4): | +2 |
| Acceptance of Responsibility | -3 |
| Total Offense Level: | 19 |

Offense level 19 in CHC I has an advisory range of 30-37 months' imprisonment.  Plea

Agreement at 4.   Mr. Semplice also agreed to forfeit $35,000.00, which is to be paid in

installments as per the Plea Agreement.  Plea Agreement at 6-8.  No restitution is applicable.

Further, the Government has agreed to take no position concerning where within the Guidelines

range determined by the Court the sentence should fall and to make no motion for an upward

departure under the Sentencing Guidelines.  Plea Agreement at 6.

The Probation Department's analysis coincides with the parties and it also calculates

Semplice's Offense Level at 19 and CHC at I.  PSR at 5-6.

**C.      Overview of Relevant Legal Principles.**

As the Court knows, the guidelines are advisory and serve simply as the starting point or

initial benchmark for the Court.  *United States v. Booker*, 543 U.S. 220 (2005).  The sentencing

court should: (1) determine the applicable advisory Guidelines range; and then (2) determine,

based on all of the other factors set forth in 18 U.S.C. § 3553(a), in determining and imposing

sentence. See *United States v. Crosby*, 397 F.3d 103, 113 (2d Cir. 2005); See *Gall v. United*

*States*, 128 S. Ct. 586, at 596-97.

In its review of the factors enumerated in 18 U.S.C. § 3553(a):

[t]he Court shall impose a sentence sufficient, but not greater than necessary . . .
[and] shall consider—

1.      The nature and circumstances of the offense and the history and
        characteristics of the defendant;

2.      The need for the sentence imposed—

        a.      To reflect the seriousness of the offense, to promote respect for the
                law, and to provide just punishment for the offense;

        b.      To afford adequate deterrence to criminal conduct;

        c.      To protect the public from further crimes of the defendant;

        d.      To provide the defendant with needed educational or vocational
                training, medical care, or other correctional treatment in the most
                effective manner;

3.      The kinds of sentences available;

4.      The kinds of sentence and the sentencing range established . . . [by the
        sentencing guidelines];

4

5.      Any pertinent policy statement . . .

6.      The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

7.      The need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a) (some minor alterations not noted).

In *Gall*, the Supreme Court explained that, while the guidelines are a "starting point" and an "initial benchmark," courts "may not presume that the Guidelines range is reasonable" or that "extraordinary circumstances" are necessary to 'justify a sentence outside the Guidelines range." *Id*. at 595-597. The guidelines are only "one factor among several [that] courts must consider in determining an appropriate sentence." *Kimbrough v. United States,* 129 S. Ct. 1612 (2009); *Bain v. United States*, 129 S. Ct. 2157 (2009). Courts "must take an individualized assessment" of the appropriate sentence "based on the facts presented" and all of the factors detailed in 18 U.S.C. Sec. 3553(a), *Gall*, 128 S.Ct. at 590. *United States v. Johnson*, 567 F. 3d 40 (2d Cir. 2009). "District judges are, as a result, generally free to impose sentences outside the recommended range." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (*en banc*) (footnotes omitted).

Thus, "[t]he Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable." *Nelson v. United States*, 129 S. Ct. 890, 892 (2009 (emphasis in original). The Second Circuit has also explained that "'reasonableness' is inherently a concept of flexible meaning, generally lacking precise boundaries." *United States v. Verkhoglyad*, 516 F.3d 122, 134 (2d Cir. 2008) (quoting *United States v. Crosby,* 397 F.3d at 115). It further recognizes that a range of sentences can appropriately be deemed reasonable in any particular case. *United States v. Patterson*, 538 Fed. App'x 62, 63 (2d Cir. 2013) (citing *United States v. Jones*, 531 F.3d 163, 174 (2d Cir. 2008)). If the court "conclude[s] that two sentences equally serve the statutory purposes of § 3553, it [cannot], consistent with the parsimony clause, impose the higher." *United States v. Ministro-Tapia*, 470 F.3d 137, 142 (2d Cir. 2006).

5

"A sentencing judge has *very wide latitude* to decide the proper degree of punishment for an individual offender and a particular crime." *Cavera*, 550 F.3d at 188 (emphasis supplied). The Second Circuit Court of Appeals has made clear that it will "not substitute [its] own judgment for the district court's on the question of what is sufficient to meet the § 3553(a) considerations in any particular case." *Cavera*, 550 F.3d at 189; *United States v. Florez,* 447 F.3d 145, 157-58 (2d Cir.), *cert. denied*, 549 U.S. 1040, 127 S.Ct. 600 (2006)).

In addition, the Court can exercise wide discretion in the sources and types of evidence it utilizes to determine the kind and extent of punishment to be imposed within limits fixed by law, including, in particular, the fullest information possible concerning a defendant's life and characteristics:

> "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States,* 518 U.S. 81, 113 . . . (1996). Underlying this tradition is the principle that "the punishment should fit the offender and not merely the crime." *Williams,* 337 U.S. at 247 . . . .

*Pepper v. United States*, 562 U.S. 476, 487-88, 131 S. Ct. 1229, 1239-40 (2011). With the above principles in mind, Mr. Semplice respectfully submits that, when the Court applies the factors listed in 18 U.S.C. § 3553(a), to the history and characteristics of Mr. Semplice and the circumstances of the offense to which he has pleaded guilty, a non-Guidelines sentence is just, appropriate and warranted.

**D.    Application of 3553(a) Factors Warrant a Non-Guidelines Sentence.**

As noted, Section 3553(a) requires the Court to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." Paragraph (2) of Section 3553 (a) sets forth those purposes:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to

provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant;

(D) to provide the defendant with the needed educational or vocational training,

medical care, or other correctional treatment in the most effective manner.

18 U.S.C. 3553(a)(l) requires the Court to consider the history and characteristics of the defendant. We have included for the Court's consideration a review of Paul Semplice's history and characteristics from the perspective of a range of individuals who know him best: family and friends.

At 55 years old, Semplice has no criminal record and this case represents his first contact with the criminal justice system.  He emigrated with his family to the United States from Italy at the age of four and subsequently became a naturalized United States citizen.  His parents raised him with his two siblings in a middle-class household in Brooklyn, New York.

Tellingly, since childhood, Mr. Semplice has been an incredibly hard worker, working to support his family with his income.  At the age of 13, he started sweeping floors in a warehouse, and became a warehouse associate until his late teens.  It was also during his teenage years that he left school so that he could help provide for his family.  At that time, Mr. Semplice began what would be a long career in the paving trade.  Mr. Semplice has been involved in the construction industry in New York for over 33 years.  From 1984 until 2017, he worked for two paving companies during which time he was promoted to foreman/supervisor.  He always worked long days, and even working as a supervisor, he would operate the heavy machinery. Unfortunately, his ability to work was disrupted in 2017 when he seriously injured his back, which, as discussed *supra,* has required major surgery and rehabilitation.

7

Furthermore, Paul Semplice has an extremely strong family life.  He has been married to his wife Barbara since 1988, and they have raised two children, John Paul, their son who was recently married, and their daughter Melissa.  The Semplices' daughter, son and daughter-in law all live in the family's home. As indicated in the PSR, Mr. Semplice has worked to provide his children with a good education and has always put his family first.  PSR at 8.  At the same time, he was there for his family in many ways, to coach flag football, to bring them to and from school, and to volunteer whenever needed.  He has served as a positive role model to his children and their friends.  In addition to his family, his brother and sisters' families and their parents all live under the same roof, a three-family home owned by his parents.  PSR at 9.  Fortunately, such close proximity allows Mr. Semplice to assist his elderly parents and to provide care for his adult niece, who has special needs.

Indeed, Paul Semplice has a reputation as a compassionate person who helps people in need, and who has had a positive impact on so many, whether they be family, friends or even strangers.

 Submitted with this memorandum are letters from Mr. Semplice's devoted family, friends and colleagues that provide the Court with some insight into his nature and character. Exhibit 1, Letters to the Court from Family and Friends.  As reflected in the letters, Paul Semplice is an incredible person of great generosity, loyalty, warmth and love, and a person who has played a positive and important role in so many lives.   The letters talk of him sponsoring a child from the Philippines, providing first-aid and support to those in need, and of providing guidance and direction for many.

Take for example, the compelling letter of Luis Agurto, a friend of Mr. Semplice's son John Paul, who writes of his extraordinarily high regard for Semplice, "[d]uring the darkest time of my life, he was the light and support that I needed to persevere."  Another letter, written by

Lilen Astuto, Paul Semplice's friend for more than 45 years, writes, "Paul worked like crazy to give his family everything they need.  He put both his kids through private school.  My father was so proud of Paul . . . My father forgot who many people were, both family and friends, but all he had to do was hear Paul's voice and his whole being would change, his eyes would light up and he would say open the door my Godson Paul is here."

Mr. Semplice's daughter Melissa tells a story that really captures her father's essence. She writes about taking walks with her father when he was allotted 30 minutes to rehabilitate his back.  Once they saw a lady lying on the street in pain.  While other pedestrians kept walking by, her father immediately went to help the woman.  He called an ambulance and got her a bottle of water, and rather than taking the rest of his walk, he and his daughter comforted the stranger. When his curfew was almost up, Paul instructed his daughter to stay with the woman until the ambulance came to make sure that she was given treatment.  This reflects the kind of person who Paul Semplice is.

The compelling letters clearly show that Mr. Semplice has all of the characteristics needed to enable him to realize his goal of returning to a productive life contributing to the welfare of his family and his community.  In addition, the letters indicate he's helped and continues to help people make new starts in their lives when things seem impossible for them. He is the first to lend a helping hand to friend or family—or even stranger—when in need. He possesses the motivation, traits and ability necessary to redirect his course in life and to play an important and positive role to his family and his community.

Mr. Semplice's physical condition merits thoughtful consideration.  As the Court is aware, Mr. Semplice is recovering from a work injury that seriously debilitated him and has left him partially disabled.  In 2018, Mr. Semplice underwent Lumbar Spinal Fusion Surgery. See

Exhibit 2, Letter from NY Orthopedics.[1] He has been faced with a painful, difficult and long recovery that is not complete, and that is likely to require additional procedures. Currently, Mr. Semplice reports a herniated disk in his neck, and nerve damage, with numbness in his limbs. He is vulnerable to additional injury. He is unable to lift heavy objects, or to sit or to stand in one place for long periods of time. He will need continuous treatment and care in the future. Mr. Semplice, because of his condition, remains frequently at home as a result of his injury and dealing with his family's issues and caring for his relatives. We respectfully submit that his health condition and the possible future consequences merit a reduction under the minimum advisory guideline range.

Accordingly, based upon the above, together with the letters submitted on his behalf, it is respectfully submitted that Semplice's history and characteristics favor a non-Guidelines sentence.

Additionally, the remaining § 3553(a) factors also support a non-Guidelines sentence. In view of the issues discussed herein, it is our position that a non-Guidelines sentence would adequately "reflect the seriousness of the offense, . . . promote respect for the law, and provide just punishment for the offense."

With regards the need to deter others from similar crimes, it is respectfully submitted that a non-Guidelines sentence would achieve that aim. There is growing evidence that lengthy prison terms are not effective as a general deterrent; rather, it is the likelihood of punishment and not its severity that has the greatest deterrent effect. See, e.g., United States v. Bannister, 786 F. Supp. 2d 617, 660, 668 (E.D.N.Y. 2011). Further, there are ample examples of defendants in

---

[1] Should the Court deem appropriate a period of incarceration, it is respectfully requested that the Bureau of Prisons be made aware that Mr. Semplice cannot climb ladders or perform physical work, and that he may require orthopedic devices, including orthopedic shoes or sneakers, due to his recovery.

this district and others receiving substantially lesser sentences for comparable and worse conduct.

With respect to the need to protect society from further crimes by Semplice, it is our view that at the age of 55, he presents an extremely low risk of recidivism. Mr. Semplice, who was in devastating pain during his approximate two weeks of incarceration and subsequent year of home strict detention has absolutely no interest in going through another similar ordeal. Further, he is a very hard-working individual who has been dedicated to providing for his wife and children and seeks to continue to provide positive support to his family and community.

Despite the government's allegations against Mr. Semplice concerning his associations, which only serve to taint Mr. Semplice in a non-racketeering indictment, these words do not measure up against his record. Mr. Semplice has had absolutely no interaction with the justice system before, and his involvement in the conspiracy was limited to a brief six-month period, which is quite telling given the active role of law enforcement bringing hundreds of cases involving corruption in the New York Construction industry in this district over just the past decade.

Moreover, despite the Bureau of Prison's self-stated ability to care for inmates who require medical care, it cannot be seriously doubted that given the seriousness implications of spinal nerve damage, Mr. Semplice presents as a vulnerable individual and his medical care and ongoing condition will not receive the most effective treatment in a correctional facility.

As the Court knows, the toll of lengthy incarceration will be inflicted not only upon him but also upon his family. He is the rock of the family; his absence will negatively affect significantly not only his wife and children, but his sister's and brother's families, and his parents, both financially and emotionally. Mr. Semplice, who, incidentally has always filed and paid his taxes, has been financially damaged by his injury and inability to work, and, along with

11

the costs associated with his arrest, has necessitated in the family reaching deeply into their savings, and living beyond their means.

In the post-*Booker* era, in considering the kinds of sentences available, there are many options for the Court's consideration, and we submit that in light of the unique facts of the instant case, something other than a guidelines range sentence is warranted.  See *Gall*, 128 S. Ct. at 593 (upholding sentence of probation in ecstasy distribution case and quoting district court's characterization of probation as "'a substantial restriction of freedom'" and not "an act of leniency'").

**E.      Additional Considerations**

As the PSR reflects, Mr. Semplice's financial circumstances are such that a fine would present an undue hardship to him and his family, it is, therefore, respectfully requested that the Court not impose any financial penalty.   Further, as reflected in the PSR ¶ 8, restitution is not applicable in this case.

As indicated above, Mr. Semplice is a devoted family man who shoulders considerable family responsibilities.  He has led an otherwise commendable, hard-working life.  He has recently suffered a serious injury that will require further treatment.  The letters of support demonstrate that his family and friends in the community love him and think the world of him even despite is transgression.  It is, therefore, submitted that, taken as a whole, Paul Semplice is a man worthy of leniency and it is respectfully requested that the Court exercise its discretion and impose a non-guidelines sentence.

12

**Conclusion**

For the foregoing reasons, Paul Semplice respectfully requests that the Court impose a non-guidelines sentence substantially below the advisory range so that he may be able to return to a law-abiding life, be a productive member of society, and provide support to his family.

Dated:  New York, New York
       March 18, 2019

                                        Respectfully submitted,


                                        s/ALLEN C. FRANKEL
                                        Attorney at Law
                                        299 Broadway, Suite 1405
                                        New York, New York 10007
                                        212-227-6655
                                        allencfrankel@mac.com

                                        *Attorney for Paul Semplice*

A.U.S.A Drew Rolle & Tanya Hajar (via ECF)
U.S. Probation Officer Patricia A. Sullivan (via Email)